## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANCISCO JAVIER ARTEAGA,

        Plaintiff,

    v.

HUDSON COUNTY CORRECTIONAL
CENTER,

        Defendant.

Civil Action No.  21-19982 (KM) (CLW)


**OPINION**

**KEVIN MCNULTY, U.S.D.J.**

    Plaintiff Francisco Javier Arteaga, a pre-trial detainee at Hudson County Correctional Center ("HCCC"), seeks to pursue various claims against HCCC. (DEs 1-2.) On December 8, 2021, I administratively terminated the action because Plaintiff failed to pay the filing fee or apply to proceed *in forma pauperis* ("IFP") and used an improper pleading. (DE 3.)

    On March 21, 2022, Plaintiff filed a proper IFP application and Amended Complaint.[1] (DE 6.) Plaintiff has also filed a "pro se motion for the dismissal of action," apparently aimed at dismissing the pending state criminal action for which he is detained. (DE 5.) Because Plaintiff has submitted an IFP affidavit and certified account statement demonstrating financial need, I will grant the IFP application. 28 U.S.C. § 1915(a)(2). However, I will dismiss the action without prejudice after screening pursuant to 28 U.S.C. § 1915(e)(2)(B). I will also deny the motion to dismiss without prejudice.

---

[1] Though my order directed Plaintiff to re-file within 60 days, Plaintiff wrote on March 8, 2022 to inform the Court that he did not receive a blank IFP application or complaint. (DE 4.) When the Clerk of Court re-sent them, Plaintiff promptly filed the Amended Complaint and IFP application. Accordingly, I will permit the late filing.

## I. BACKGROUND

Crediting Plaintiff's allegations and affording him every favorable inference, as I must during the screening process, HCCC "intentionally promoted" unsafe premises resulting in injuries to Plaintiff. (DE 6 at 4.) According to Plaintiff, this happened in three ways.

First, on January 20, 2021, an Officer "Martin" allowed other inmates to tie a bedsheet to a staircase to permit "pull-up" exercises. (*Id.* at 5, ¶ 6.) Forced to maneuver around the bedsheet, Plaintiff fell down "20 plus" metal steps. (*Id.*)

The second relates to Plaintiff's treatment after the fall, which injured Plaintiff's left shoulder. Plaintiff was transported to Jersey City Medical center, where he received an x-ray and CT scan. (*Id.* at 6, ¶ 6.) Plaintiff believes that he has torn ligaments and may require surgery, but HCCC medical staff have denied his requests for an MRI. (*Id.*) Instead, Plaintiff continues to receive physical therapy, which he believes has exacerbated the pain.

Finally, while the exact contours of this claim are unclear, Plaintiff appears to allege that he contracted COVID-19 through one of two vectors. The first is a vaccinated cellmate who, due to the COVID-19 vaccine, "shed pathogens" which infected Plaintiff. (DE 1 at 11.)

The second potential source of infection occurred after a prison riot in another cell block stemming from a COVID outbreak necessitated Plaintiff's transfer (together with his cellmate) to that block. (*Id.* at 4.) Plaintiff was moved to that cell block before it was cleaned and immediately contracted COVID-19 "along with over 50% of the other inmates" (*Id.*). He was then quarantined with another COVID-positive inmate. (*Id.* at 4.)

According to Plaintiff, despite being asthmatic and experiencing a rash and coughing blood, medical staff monitored his vital signs without further treatment. (*Id.* at 4-5.) Plaintiff asserts that HCCC officials continue to ignore the continued risk posed to him by vaccinated inmates, victims of the "experimental" COVID-19 vaccines, "shedding pathogens." (*Id.* at 13.)

## II. DISCUSSION

### A. Screening

#### 1. Standards

Under the Prison Litigation Reform Act ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding IFP. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous,

is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Iqbal, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged

3

deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### 2. Claims against HCCC

As a threshold matter, HCCC, the only defendant named, is not a person amenable to suit in § 1983 actions. *Harris v. Hudson Cty. Jail*, No. CIV.A. 14-6284 JLL, 2015 WL 1607703, at *5 (D.N.J. Apr. 8, 2015) (collecting cases). The correct entity would be the county operating the facility, or an individual at that facility. *Id.* Accordingly, I will dismiss any and all claims against HCCC.

### 3. Other issues

Even if Plaintiff had named the county or an individual—for example, Hudson County or Officer Martin—the allegations as currently written would still fail to support any constitutional claim.

The allegations surrounding the bedsheet and Plaintiff's fall down the stairs amount, at most, to a state-law negligence claim which would not implicate the Eighth Amendment or due process concerns. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (rejecting claim by inmate that he slipped on a pillow negligently left on the stairs by a correctional deputy stationed at the jail). Accordingly, that claim will be dismissed, without prejudice as to Plaintiff's right to assert the claim in state court or any other appropriate forum, subject to that forum's procedural rules.

Similarly, Plaintiff's deliberate indifference claims relating to his shoulder and desire for an MRI also fail to state a constitutional claim. Deliberate indifference exists where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Allegations of medical malpractice or disagreement as to proper medical treatment are insufficient to establish a constitutional violation. *See Watkins v. Cape May County Corr. Center (Medical Dept.)*, 240 F. App'x 985, 987 (3d Cir. 2007) (per curiam) (failure to order MRI and refill medications was not deliberate indifference where physician believed such actions were not medically necessary). "If the doctor's judgment is ultimately shown to be mistaken, at most what

4

would be proved is medical malpractice, not an Eighth Amendment violation." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Failure to order an MRI upon a prisoner's request does not demonstrate deliberate indifference. *Dykeman v. Ahsan*, 560 Fed. App'x. 129, 131-32 (3d Cir. 2014); *Rhines v. Bledsoe*, 388 Fed. App'x. 225, 228 (3d Cir. 2010).

Here, Plaintiff's Amended Complaint acknowledges that he received immediate medical care, including diagnostic x-rays and a CT scan, followed by a course of physical therapy. Plaintiff's dissatisfaction with that treatment does not state a constitutional claim. Accordingly, that claim will also be dismissed, again without prejudice as to Plaintiff's right to assert any such claims in the appropriate forum.

Finally, Plaintiff's COVID-19 arguments also fail to state a claim. From these allegations, I extract two claims: first, that HCCC caused him to contract COVID-19, and continues to expose him to further risk, through substandard disinfection procedure and/or continued exposure to vaccinated individuals "shedding pathogens"; and second, that once he was diagnosed, medical staff did not provide treatment.

I first address the unconstitutional punishment argument stemming from Plaintiff's having contracted COVID. To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to "punishment." *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *see also Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) ("Given pretrial detainees' federally protected liberty interests ... under the Due Process Clause ... a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.")

However, courts must acknowledge that practical considerations of detention justify limitations on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." Id. at 546; *see also Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020). Thus, courts must consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that

purpose. *Hope*, 972 F.3d at 326 (citing *Hubbard I*, 399 F.3d 150, 159–160 (2005)); see also, *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir. 1983) (though double-bunking involved cramped, crowded cells for sleeping, it was not punishment because it eliminated floor mattresses and permitted more recreational space).

The Third Circuit has held that exposure to COVID-19 and the government's failure to eliminate an inmate's risk of exposure are not per se unconstitutional. *Hope*, 972 F.3d at 330. Here, even crediting Plaintiff's assertions, there is no allegation that any individual defendant's actions or broader policy resulted in Plaintiff's exposure to COVID-19. To the contrary, his transfer to the cell block where the riot occurred, and later to a quarantine unit, appears to be "a legitimate response to an unprecedented situation undertaken to prevent further spread of the virus," *Azcona v. Ellis*, No. CV 20-8526, 2021 WL 1139843, at *2 (D.N.J. Mar. 25, 2021), or to contend with the riot—not an attempt to punish prisoners. To the extent that Plaintiff alleges that he may have contracted COVID-19 because of substandard disinfection, Plaintiff does not allege enough specific facts to state a claim; for example, the conditions when he got there, or what an appropriate disinfection regimen would have looked like.

As to Plaintiff's claim that he is at risk because vaccinated individuals continue "shedding pathogens," Plaintiff appears to conflate the lower chance that a vaccinated individual can still contract COVID with a dubious theory that vaccinated individuals are perpetually infectious. (DE 1 at 11 (citing interview of Dr. Robert Malone on the Sean Hannity Show).) However, whatever the merit of Plaintiff's theory, the Third Circuit has warned against making "ideal" conditions, such as the ability to socially distance, a "sine qua non of constitutional detention." *Id.* at 327. The Third Circuit reiterated that the "touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.' " *Id.* at 326. In any event, Plaintiff himself implicitly acknowledges that HCCC officials *have* effectuated a vaccination program incentivizing detainees to get vaccinated, (DE 1 at 5), which is likely to lower infection, hospitalization, and death among detainees. *See* https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status ("People who were unvaccinated had a greater risk of testing positive for COVID-19 and a greater risk of dying from COVID-19 than people who were vaccinated with a primary series.") Accordingly, Plaintiff has failed to state a claim that his pretrial detention amounts to punishment.

6

Nor has Plaintiff adequately stated his other claim for deliberate indifference. Construed liberally, Plaintiff's allegations appear to be aimed at a claim that medical staff acted with deliberate indifference to his vulnerability to COVID-19. To establish deliberate indifference, Plaintiff must show a particular defendant knew of and disregarded an excessive risk to his health and safety. *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A detainee's particular vulnerability, coupled with detention conditions, can create a substantial risk of harm. *Palakovic v. Wetzel*, 854 F.3d 209, 224 (3d Cir. 2017) (particular vulnerability to suicide due to mental health conditions); *Natale*, 318 F.3d at 582 (particular vulnerability due to insulin dependent diabetes). However, deliberate indifference requires significantly more than negligence. *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998). "Mere disagreement" as to the response to a plaintiff's heightened vulnerability will not support constitutional infringement. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Here, Plaintiff does not indicate that he told any individual staff member of his asthma or other comorbidity placing him at higher risk of COVID-related complications. *Hope*, 972 F.3d at 330 (citing *Natale*, 318 F.3d at 582) (deliberate indifference based on COVID-19 exposure must still establish that the Defendant had the requisite mental state, akin to recklessness). Nor does Plaintiff allege that he was denied treatment; to the contrary, Plaintiff's original complaint acknowledged that medical staff monitored his vital signs.[2] (DE 1 at 5.) And as discussed above, Plaintiff also acknowledges that he was offered a COVID vaccine. Accordingly, I will also dismiss this claim. This dismissal will also be without prejudice, as it is plausible that Plaintiff could assert additional facts against the appropriate entity to survive screening.

**B. Motion to Dismiss**

Plaintiff has also filed a motion to dismiss his state criminal action, alleging various due process violations by state officials. (DE 5.) Though styled as a motion to dismiss, Plaintiff's request is, in substance, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Section 2241 "authorizes a federal court to issue a writ of habeas corpus to any pretrial detainee who is in custody in violation of the Constitution or laws or treaties of the United States," but "that jurisdiction must be exercised sparingly in order to prevent in the ordinary circumstance

---

[2] Plaintiff objects that "no examination was given." It is unclear whether he is distinguishing between an "examination" and "taking vital signs."

7

pre-trial habeas interference by federal courts in the normal functioning of state criminal processes." *Duran v. Thomas*, 393 F. App'x 3, 4 (3d Cir. 2010) (citing *Moore v. DeYoung*, 515 F.2d 437, 441–42 (3d Cir. 1975). In other words, federal courts are very unlikely to take over and pre-try the merits of a pending state prosecution.

While federal courts have some jurisdiction to hear habeas challenges by state pre-trial detainees, "that jurisdiction without exhaustion should not be exercised at the pretrial stage unless extraordinary circumstances are present." *Moore,* 515 F.2d at 443. In the absence of extraordinary circumstances, which do not include the premature litigation of defenses as Plaintiff attempts here, "the district court should exercise its pre-trial habeas jurisdiction only if [the] petitioner makes a special showing of the need for such adjudication and has exhausted state remedies" by presenting his claim to the highest state court. *Id.* Here, neither attempted exhaustion, nor extraordinary circumstances obviating exhaustion, are present. Accordingly, I will deny the motion, again without prejudice as to Plaintiff's right to pursue his arguments in state court, subject to any relevant procedural requirements of the appropriate forum.

## III.   CONCLUSION

For the reason above, Plaintiff's application to proceed IFP is GRANTED, Plaintiff's Amended Complaint is DISMISSED after screening (with prejudice as to HCCC and without prejudice as to other potential claims against the appropriate entities), and Plaintiff's motion to dismiss is DENIED WITHOUT PREJUDICE. An appropriate order follows.

Date: March 25, 2022

/s/ Kevin McNulty

_____

Honorable Kevin McNulty
United States District Judge